UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LEO B. BUNKER,

           Petitioner,

   v.

JERI BOE,

           Respondent.

CASE NO. 3:18-cv-05243-BHS-DWC

REPORT AND RECOMMENDATION

Noting Date: September 28, 2018

The District Court has referred this action to United States Magistrate Judge David W. Christel. Petitioner Leo B. Bunker, proceeding *pro se* and *in forma pauperis*, filed his federal habeas Petition pursuant to 28 U.S.C. § 2254, seeking relief from his incarceration pursuant to state court convictions for rape, felony harassment, and violation of a no-contact order ("VNCO"). Dkt. 3. Petitioner argues he received ineffective assistance of counsel because trial counsel failed to impeach L.H.,[1] Petitioner's victim and a key state witness, using cell phone

---

[1] The state court decisions in this case reference the victim only by her initials to protect her privacy; this Court will do likewise.

REPORT AND RECOMMENDATION - 1

records and text messages between Petitioner and L.H. and through other potential impeachment witnesses. However, Petitioner's claim that trial counsel failed to adequately investigate several other witnesses that could have provided valuable impeachment evidence against L.H. is unexhausted and now procedurally defaulted. Further, Petitioner has failed to show the Washington Supreme Court unreasonably applied clearly established federal law when it ruled on Petitioner's claim that trial counsel failed to use cell phone records and text messages between him and L.H. to impeach L.H. Therefore, the Court recommends Petitioner's Petition be denied and a certificate of appealability be denied.

## BACKGROUND

### I.     Factual Background

Petitioner was initially convicted of two counts of rape in the second degree, one count of felony harassment, and two counts of VNCO. Dkt. 8, Ex. 6. He was sentenced to 460 months imprisonment. *Id*. The Washington Court of Appeals ("Court of Appeals") stated the facts of the case on direct appeal:

> L.H.[2] has known Bunker since childhood. L.H. and Bunker lost touch for over 30 years, but reconnected in August 2011. Bunker and L.H. subsequently moved in together and commenced a dating relationship.
>
> Shortly thereafter, Bunker exhibited controlling behavior. He became possessive, demanding, and aggressive physically and sexually towards L.H. Bunker reportedly told L.H. that she "had no choice" in anything he wanted to do to her sexually and regularly forced L.H. to engage in sexual acts against her will. Bunker also threatened L.H., telling L.H. that she could not leave because she belonged to him and that if she did leave, he would kill her. L.H. believed that Bunker would carry out these threats because she knew that Bunker had previously assaulted and hospitalized his ex-wife.
>
> Despite L.H.'s wishes to the contrary, Bunker and L.H. were married on October 8. A few days later, Bunker became enraged when he learned that L.H. had been on the phone with a man. Bunker shoved L.H. onto the bed and pinned her down.

---

[2] We refer to the victim by her intitials to protect her privacy. [footnote by Court of Appeals]

Bunker bit L.H. and grabbed her around the throat, making it difficult for her to breathe. L.H. told Bunker to stop, that "[she didn't] want to do this," and that she was hurt. Instead, Bunker removed L.H.'s pants and forced her to have vaginal intercourse.

L.H. testified that she had sex with Bunker nearly every day after the October 11 incident and that she would frequently tell Bunker to stop when he performed sexual acts that she did not like. L.H. described sex with Bunker after the October incident as "pretty much always forceful." Specifically, L.H. claimed that she told Bunker to stop when they had oral sex, that Bunker would not stop, and that Bunker told L.H. that she "didn't have any choice what [sic] he wanted to do."

After Bunker began serving a prison sentence in early November for an unrelated crime, L.H. called police to report that she had been raped. L.H. then obtained a temporary protection order prohibiting Bunker from having either direct or indirect contact with her. Bunker was served with a copy of the temporary order on November 8. The order remained in effect until November 21.

Subsequently, Bunker contacted Amy and Barbara Krahn and requested that they retrieve his belongings from L.H.'s home. L.H. testified that the Krahns called her as many as 10 times and that she called the Krahns back sometime around November 9 or 10. On at least one occasion on November 14, a police officer approached the Krahns as they left L.H.'s home. Furthermore, L.H. claimed that Bunker called and text messaged her frequently after he was incarcerated,[3] but that she stopped answering those calls because Bunker was often belligerent. Bunker also wrote a letter to L.H., which, by her recollection, she received sometime after November 10.

. . .

The State[] charged Bunker by fifth amended information with two counts of second degree rape (counts I and II), one count of harassment—threat to kill (count III), and two counts of VNCO (counts IV and V) occurring between November 8 and November 14. Before trial, the State moved to introduce evidence of several of Bunker's prior convictions for assault. The State argued that L.H.'s knowledge that Bunker had previously assaulted his former wife established that L.H.'s fear of Bunker was an objectively reasonable fear. After weighing the probative value of the evidence against its potential prejudicial effect, the trial court admitted evidence of Bunker's prior conviction for second degree assault under ER 404(b) for the limited purpose of establishing the "reasonable fear" element of the harassment charge.

---

[3] The record does not definitively establish the dates of these calls or texts and L.H. was not asked specifically. [footnote by Court of Appeals]

REPORT AND RECOMMENDATION - 3

> The jury found Bunker guilty as charged and the trial court imposed an exceptional sentence. In addition, the trial court imposed community custody conditions that prohibited Bunker from having contact with minors, frequenting locations where minors are known to congregate, or occupying positions of trust or authority over minors.

Dkt. 8, Ex. 12 at pp. 2-4; *State v. Bunker*, No. 45006-2-II, 2015 WL 161287 at *1-*2 (Div. II 2015) (citations to record omitted).

## II.     Procedural History

### A.    Direct Appeal

Petitioner filed a direct appeal of his convictions, raising eight grounds for relief, none of which relate to this Petition. Dkt. 8, Ex. 9. He also filed a *pro se* Statement of Additional Grounds ("SAG"), raising nine additional arguments, including, in pertinent part, a claim of ineffective assistance of counsel for failing to impeach L.H. using her text messages, but did not include a claim for failing to use her cell phone records to impeach L.H. *Id.*, Ex. 10. On January 13, 2015, the Court of Appeals issued an unpublished opinion affirming Petitioner's convictions in part and reversing in part. *Id.*, Ex. 12. That court reversed one of Petitioner's convictions for VNCO, and further accepted the State's concession of error regarding the trial court's community custody conditions. *Id.* at pp. 9-11, 18-19. The Court of Appeals affirmed Petitioner's other convictions and remanded to the trial court for entry of an amended judgment and sentence. *Id.* at p. 22. Neither party sought review by the Washington Supreme Court, and a mandate was issued on April 9, 2015. *Id.*, Ex. 15.

### B.    Appeal Following Remand

On remand, the trial court issued an order vacating Petitioner's Felony Judgment and Sentence, Dkt. 8, Ex. 16, and issued a new Felony Judgment and Sentence on May 8, 2015, *Id.*, Ex. 17. The new Felony Judgment and Sentence sentenced Petitioner to 400 months in prison

1 and omitted his reversed VNCO conviction. *Id*. Petitioner again appealed to the Court of
2 Appeals, raising grounds unrelated to his present Petition, *Id*., Ex. 18, and the Court of Appeals
3 affirmed his convictions, *Id*., Ex. 20. The parties did not seek review from the Washington
4 Supreme Court, and the Court of Appeals issued its mandate on August 25, 2016. *Id*., Ex. 21

### C. Personal Restraint Petition

Petitioner filed a pro se personal restraint petition ("PRP") with the Court of appeals, raising two grounds: (1) the trial court erred in not admitting L.H.'s cell phone records and text messages between Petitioner and L.H.; and (2) he received ineffective assistance of counsel when trial counsel failed to use L.H.'s cell phone records and text messages to impeach L.H. Dkt. 8, Ex. 22. The Court of Appeals dismissed Petitioner's PRP on the merits. *Id*., Ex. 26. Petitioner filed a Motion for Discretionary Review with the Washington Supreme Court, raising two grounds relevant to the present Petition: (1) he received ineffective assistance of counsel because trial counsel failed to impeach L.H. with the her cell phone records and text messages between her and Petitioner; and (2) he received ineffective assistance of counsel because trial counsel failed to conduct a reasonable investigation that would have led to impeachment evidence against L.H. from witnesses Engelbertson, McKnight, Addkins, and Armstrong. *Id*., Ex. 29. The Washington Supreme Court Commissioner ("Commissioner") denied review, analyzing Petitioner's claim that trial counsel was ineffective when he failed to use L.H's cell phone records and text messages to impeach L.H. on the merits. *Id*., Ex. 35. However, the Commissioner declined to analyze whether trial counsel was ineffective when he failed to adequately investigate several other witnesses that could have provided valuable impeachment evidence against L.H. because it had been raised for the first time in Petitioner's Motion for

1  Discretionary Review. *Id*. A Certificate of Finality was issued, indicating the decision became
2  final on December 7, 2017. *Id*., Ex. 36.
3     D.  <u>Federal Petition</u>
4        On March 26, 2018, Petitioner filed this Petition. Dkt. 1. He raises one ground containing
5  two subgrounds, claiming he received ineffective assistance of counsel because: (1) trial counsel
6  failed to use L.H.'s cell phone records and text messages between Petitioner and L.H. to impeach
7  L.H.; and (2) trial counsel failed to adequately investigate several other witnesses that could have
8  provided valuable impeachment evidence against L.H. Respondent filed a Response, arguing
9  Petitioner's second subground was unexhausted, and addressing his first subground on the
10 merits. Dkt. 6. The Court ordered supplemental briefing, asking Respondent to clarify whether
11 the allegedly unexhausted second subground was procedurally defaulted, whether Petitioner had
12 filed a mixed petition, or whether the Court could otherwise make a determination as to the
13 unexhausted subground. Dkt. 9. Respondent filed supplemental briefing, indicating she believes
14 the unexhausted subground is procedurally defaulted, and further arguing that it fails on the
15 merits. Dkt. 10.

16 <center>STANDARD OF REVIEW</center>

17       Pursuant to 28 U.S.C. § 2254(d)(1), a federal court may not grant habeas relief on the basis
18 of a claim adjudicated on the merits in state court unless the adjudication "resulted in a decision
19 that was contrary to, or involved an unreasonable application of, clearly established federal law, as
20 determined by the Supreme Court of the United States." In interpreting this portion of the federal
21 habeas rules, the Supreme Court has ruled a state decision is "contrary to" clearly established
22 Supreme Court precedent if the state court either (1) arrives at a conclusion opposite to that
23 reached by the Supreme Court on a question of law, or (2) confronts facts "materially
24

indistinguishable" from relevant Supreme Court precedent and arrives at an opposite result. *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Moreover, under § 2254(d)(1), "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). An unreasonable application of Supreme Court precedent occurs "if the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. In addition, a state court decision involves an unreasonable application of Supreme Court precedent "'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Williams*, 529 U.S. at 407).

The Anti-Terrorism Effective Death Penalty Act ("AEDPA") requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Further, review of state court decisions under §2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen*, 131 S.Ct. at 1398.

<div align="center">EVIDENTIARY HEARING</div>

The decision to hold an evidentiary hearing is committed to the Court's discretion. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "[A] federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Id.* at 474. In determining whether relief is available under

28 U.S.C. § 2254(d)(1), the Court's review is limited to the record before the state court. *Cullen*, 563 U.S. at 180. A hearing is not required if the allegations would not entitle Petitioner to relief under §2254(d). *Landrigan*, 550 U.S. at 474. "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see Cullen*, 563 U.S. at 186. The Court finds it is not necessary to hold an evidentiary hearing in this case because Petitioner's claims may be resolved on the existing state court record.

## DISCUSSION

Petitioner's single ground for relief argues he received ineffective assistance of counsel at trial because: (1) trial counsel failed to use L.H.'s cell phone records and text messages between Petitioner and L.H. to impeach L.H.; and (2) trial counsel failed to adequately investigate several other witnesses that could have provided valuable impeachment evidence against L.H.. Because the second subground is procedurally barred, the Court will address it first before turning to the merits of the first subground.

**I.    Ineffective Assistance of Counsel for Failure to Impeach Using Witness Testimony (Subground 2)**

A. <u>Exhaustion of State Remedies</u>

"[A] state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971). Petitioner's claims will be considered exhausted only after "the state courts [have been afforded] a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary." *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A federal habeas petitioner must provide the state courts with a fair opportunity to correct alleged violations of federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Middleton v. Cupp*, 768 F.2d 1083, 1086 (9th Cir. 1985) (petitioner "fairly presented" the claim to the state Supreme Court even though the state court did not reach the argument on the merits). It is not enough if all the facts necessary to support the federal claim were before the state courts or if a somewhat similar state law claim was made. *Duncan*, 513 U.S. at 365-66 (citing *Picard*, 404 U.S. at 275; *Anderson v. Harless*, 459 U.S. 4 (1982)). Petitioner must include reference to a specific federal constitutional guarantee, as well as a statement of the facts entitling Petitioner to relief. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Petitioner bears the burden of proving he has exhausted available state remedies, and retains the burden to prove all facts relevant to the exhaustion requirement. *See Rose v. Lundy*, 455 U.S. 509, 520 (1982); 28 U.S.C. § 2254(b)(1)(A).

In declining to consider the portions of Petitioner's PRP addressing counsel's failure to impeach L.H.'s testimony using impeachment witnesses, the Commissioner stated:

> . . . Mr. Bunker argues that counsel should have investigated witnesses Engelbertson, McKnight, Addkins, and Armstrong, who would have impeached the victim's trial testimony. Mr. Bunker also argues that the prosecutor committed misconduct by presenting trial testimony known to be false and by failing to disclose the impeachment evidence of the phone records and text messages.
>
> The State moves to strike the portions of Mr. Bunker's motion that are presented in this court for the first time. This court will not consider argument first raised here on review of a Court of Appeals decision. *State v. Halstien*, 122 Wn.2d, 109, 130 (1993). Accordingly, the motion is granted with respect to Mr. Bunker's

> prosecutorial misconduct arguments and his arguments that counsel was ineffective in failing to properly investigate potential impeachment witnesses.

Dkt. 8, Ex. 35 at pp. 2-3 (parallel citations omitted).

Here, Petitioner has argued he received ineffective assistance of counsel because his trial counsel failed to adequately investigate several witnesses who could have provided impeachment evidence against L.H. Dkt. 3. However, the Commissioner noted Petitioner raised that argument for the first time when he filed a Motion for Discretionary Review with the Washington Supreme Court. Dkt. 8, Ex. 35, pp. 2-3. He failed to raise it with the Court of Appeals in either of his direct appeals or his PRP, *see id.*, Exs. 9, 10, 18, 22, and so the Court of Appeals did not have an opportunity to analyze it. Because the Court of Appeals did not have an opportunity to analyze the claim, the Commissioner declined to analyze it on procedural grounds and so it cannot be said that Petitioner fairly provided the state courts with "one full opportunity" to resolve his claims without federal interference. *O'Sullivan*, 526 U.S. at 838. Because Petitioner has failed to invoke one complete round of the state courts' review process as to his second subground, the Court may not examine that subground on the merits and this subground was not properly exhausted. *Picard*, 404 U.S. at 275.

B. Procedural Default

The second subground is also procedurally defaulted. Procedural default is distinct from exhaustion in the habeas context. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). The procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons or it is clear the state court would hold the claim procedurally barred. *Id.* at 1230-31 (citations omitted). If a state procedural rule would now preclude the petitioner from raising his claim at the state level, the claim is considered "procedurally defaulted" and the federal courts are barred

1 from reviewing the petition on the merits. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *O'Sullivan*, 526 U.S. at 845.

Federal courts hearing habeas petitions may not review state convictions, even for federal constitutional claims, if the state court's decision procedurally barring the petitioner's claims rests on an "independent and adequate" state law ground. *Coleman*, 501 U.S. at 729; *Franklin*, 290 F.3d at 1230-31 (procedural default rule bars consideration of a federal claim when it is clear the state court has been presented with the federal claim but declined to reach the issue for procedural reasons). The resulting bar can be express or implied. A state court invokes an express procedural bar by explicitly referring to a state rule or procedure to deny a petitioner's claim, or by referring to a case or phrase that invokes the applicable rule. *See, e.g., Zichko v. Idaho,* 247 F.3d 1015, 1021 (9th Cir. 2001) (rule); *Park v. California,* 202 F.3d 1146, 1149 (9th Cir. 2000) (case). An implied procedural bar exists when a petitioner has failed to fairly present his claims to the highest state court and would now be barred from returning to do so by an adequate, independent, and mandatory state procedural rule. *Moreno v. Gonzalez,* 116 F.3d 409, 411 (9th Cir. 1997). Procedural default is an affirmative defense, and the state has the burden of showing that the default constitutes an adequate and independent ground. *Insyxiengmay*, 403 F.3d at 665–66.

Here, Petitioner's claim that trial counsel failed to adequately investigate several other witnesses that could have provided valuable impeachment evidence against L.H. is impliedly barred under Washington law. Washington courts are barred from examining a second PRP as successive if it is based on similar grounds to a previous PRP. RCW 10.73.140. Petitioner timely filed a PRP on January 5, 2016, but did not raise his second subground in that pleading. *Id.*, Ex. 22. Thus, even if Petitioner filed a new PRP raising that second ground, it would be a second

1 PRP based on similar grounds to his previous PRP and so would be barred as second and
2 successive by an adequate, independent, and mandatory state procedural rule.

3 Further, under Washington Statute RCW 10.73.090, a PRP must be filed within one year
4 after the challenged judgment becomes final. A judgment becomes final under that statute on the
5 latest date out of: (1) the date the judgment is filed with the clerk of court; (2) the date an
6 appellate court issues its mandate on direct review; or (3) the date the United State Supreme
7 Court denies certiorari. RCW 10.73.090(3). Petitioner's new Felony Judgment and Sentence,
8 sentencing him to 400 months imprisonment, was entered on May 8, 2015. Dkt. 8, Ex. 17.
9 Petitioner's judgment became final on August 25, 2016, the date the Court of Appeals issued its
10 mandate. *Id.*, Ex. 21. Petitioner thus had until August 25, 2017 to file a PRP including his second
11 subground. Though he filed a timely PRP, he did not include his second subground and so more
12 than one year has now passed since Petitioner's conviction became final, meaning, even if he
13 filed a new PRP, it would be untimely under an adequate, independent, and mandatory state
14 procedural rule. Thus, because Petitioner failed to adequately raise his second subground to the
15 Washington Supreme Court and is now procedurally barred from doing so, Petitioner's second
16 subground is procedurally defaulted.

17 The procedural default will be excused and a petitioner will be entitled to federal habeas
18 corpus review if he "can demonstrate cause for the default and actual prejudice as a result of the
19 alleged violation of federal law, or demonstrate that failure to consider the claims will result in a
20 fundamental miscarriage of justice[.]" *See Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir.
21 1998) (citing *Coleman*, 501 U.S. at 750). To establish "cause," a petitioner must show some
22 objective factor external to the defense prevented him from complying with the state's
23 procedural rule. *Coleman*, 501 U.S. at 753 (citing *Murray v. Carrier,* 477 U.S. 478, 488 (1986)).
24 To show "prejudice," a petitioner "must shoulder the burden of showing, not merely that the

errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

Only in an "extraordinary case" may the habeas court grant the writ without a showing of cause and prejudice to correct a "fundamental miscarriage of justice" where a constitutional violation has resulted in the conviction of a defendant who is actually innocent. *Murray,* 477 U.S. at 495–96. To demonstrate he suffered a fundamental miscarriage of justice, viewing all the evidence in light of new reliable evidence, the petitioner must show "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Here, Petitioner has provided neither argument nor evidence as to cause and prejudice. *See* Dkt. 3. He has not filed any additional briefing or a traverse explaining that some objective factor external to his defense prevented him from complying with the State's procedural rule. He has also failed to show the alleged trial errors produced actual prejudice, infecting his entire trial with error of constitutional dimensions. Further, he has not provided any new evidence indicating that he is actually innocent, and so this is not one of the "extraordinary" cases where the Court may grant habeas relief to correct a fundamental miscarriage of justice. *Murray*, 477 U.S. at 495-96. Thus, Petitioner has failed to adequately exhaust his second subground and, because it is now procedurally defaulted, the Court is barred from reviewing his second subground on the merits. Accordingly, the undersigned finds Petitioner is not entitled to relief as to his second subground and recommends it be dismissed. *See Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004).

## II. Ineffective Assistance for Failure to Impeach Using Phone Records and Text Messages (Subground 1)

Petitioner also contends his trial counsel was ineffective because trial counsel failed to use L.H.'s cell phone records and text messages between Petitioner and L.H. to impeach L.H.. Respondent agrees this subground has been properly exhausted, and so the Court proceeds to the merits.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court created a two-part test for determining whether a defendant received ineffective assistance of counsel. First, a defendant must demonstrate his attorney's performance was deficient, which requires showing "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. Second, a defendant must demonstrate the deficient performance prejudiced the defense to such a degree the results of the trial cannot be trusted. *Id.*

First, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. The petitioner must carry a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (citation omitted). Second, a petitioner must establish there is a reasonable probability the results would have been different but for counsel's deficient performance. *Kimmelman v. Morrison,* 477 U.S. 365, 375 (1986); *Strickland,* 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. It is not enough that counsel's errors had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Rather, the petitioner must show that, "but for counsel's unprofessional errors, the result would have been different." *Id*. at 693-

94. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Pinholster*, 563 U.S. at 189 (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)).

When declining to review Petitioner's PRP, the Commissioner stated:

> Mr. Bunker primarily contends that trial counsel was ineffective in failing to authenticate the phone logs and text messages so as to properly impeach the victim on her trial testimony that Mr. Bunker had virtually imprisoned her and controlled her, preventing her from making phone calls. The call logs and text messages show frequent communications. To succeed on this claim, Mr. Bunker must demonstrate that counsel's performance fell below an objective standard of reasonableness in light of all the circumstances, and that in the absence of counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 840 (2012); *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Matters of legitimate trial strategy will not support a claim of ineffective assistance. *State v. McFarland*, 127 Wn.2d 322, 336 (1995).
>
> Mr. Bunker cannot demonstrate that counsel failed to investigate the phone logs and text messages, since counsel obtained the documents via subpoena. The question remaining is whether counsel should have used the documents to impeach the victim. And as an initial matter, it bears noting that Mr. Bunker fails to point the court to the portion of the victim's testimony he wished to see impeached. Among the myriad documents included with his pleadings are transcripts of police interviews with the victim and Mr. Bunker's notations showing alleged inconsistencies, but he fails to include any portion of the trial testimony itself. And he fails to cite to such testimony. This is not sufficient evidence to demonstrate his claim of ineffective assistance of counsel. *See In re Pers. Restraint of Yates*, 177 Wn.2d 1, 17-18 (2013).
>
> In any event, even assuming the victim testified that she was unable to communicate because of Mr. Bunker's control, cross-examination of the victim of a violent crime is a nuanced matter of trial strategy, fraught with peril in a jury trial. The extent of cross-examination is a matter of judgment and strategy. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 720 (2004). This court will not find ineffective assistance of counsel based on trial counsel's decisions during cross-examination if counsel's performance fell within the range of reasonable representation. *Id*. Moreover, to establish prejudice for the failure to effectively cross-examine a witness, the defendant must show that the testimony that would have been elicited on cross-examination could have overcome the evidence against the defendant. *See id.*
>
> Here, Mr. Bunker established neither that counsel's performance was deficient nor that it was prejudicial. The trial evidence was that Mr. Bunker's private life with the victim, who eventually married him, was controlling. A few days after they were married, Mr. Bunker became enraged when the victim admitted she had made a phone call to another man. Mr. Bunker shoved the victim onto the bed and pinned

> her down, bit her, and grabbed her around the throat. The victim cried for him to stop, but he forced her to have intercourse. Over the next month, Mr. Bunker frequently forced sex upon the victim over her objections. When he began to serve a prison sentence on unrelated charges the next month, the victim reported the rape to the police.
>
> Under these circumstances, the victim's allegations of Mr. Bunker's level of control were not critical and material evidence. Counsel could have reasonably chosen to let such statements pass without impeachment rather than risk the victim explaining them further and possibly gaining additional sympathy with the jurors. Similarly, the allegations of control were not critical to the victim's allegations of rape. Mr. Bunker fails to demonstrate a reasonable likelihood that the admission of the phone logs and text message would have changed the result of the trial.
>
> In sum, the acting chief judge properly dismissed the personal restraint petition.

Dkt. 8, Ex. 35 at pp. 3-5.

Here, Petitioner argues he received ineffective assistance of counsel because trial counsel failed to impeach L.H. using L.H.'s cell phone records and text messages between Petitioner and L.H. As the Commissioner noted, Petitioner's counsel was able to retrieve the alleged phone records and text messages before trial. *See* Dkt. 8, Ex. 7 at p. 132; Ex. 23. Thus, the only question is whether the Commissioner unreasonably applied clearly established federal law when he found that trial counsel acted reasonably in choosing not to use them to impeach L.H.

Petitioner argues in this Petition that the cell phone records and text messages demonstrate L.H. provided inconsistent statements as to "her ability to go places or use the phone," as well as "lying" and "telling way different stor[ie]s" about the rape. Dkt. 3. The Court begins with a presumption that "the challenged action might be considered sound trial strategy," and it is Petitioner's burden to overcome that presumption. *Strickland*, 466 U.S. at 689. Though it is true L.H. testified at trial and was cross-examined, *see* Dkt. 8, Ex. 1; Ex. 2 at pp. 72-150; Ex.

3 at pp. 327-32, 419-36, Petitioner has not indicated what specific portions of her testimony the cell phone records or text messages would place into doubt or she was "lying" about.

The Commissioner concluded that, based on the testimony presented by L.H. at trial, the allegations of a controlling relationship were not critical and material evidence that would have changed the outcome of the trial. Dkt. 8, Ex. 33 at pp. 4-5. At trial, L.H. presented evidence Petitioner became enraged after he found out she had spoken on the phone with another man, shoved her to the bed, placed his hands around her throat, ripped her pants off, and vaginally raped her. Dkt. 8, Ex. 1 at pp. 52-59. She was cross-examined as to the timing of her reporting of the rape, whether it happened more than once, and the intact state of her clothing considering they had been "ripped" off. *Id.*, Ex. 2 at 93, 98, 118-19, 128-29, 159. Based on this, trial counsel had already addressed L.H.'s memory and description of the incident. Thus, as the Commissioner found, trial counsel could have reasonably decided not to raise the cell phone record and text message impeachment evidence because he had already shown that L.H.'s accounts were inconsistent. Further, he could have been attempting to avoid allowing L.H. to provide additional detail garnering sympathy from the jury. *See*, *e.g.*, *United States v. Garcia*, 502 Fed. App'x 663, 665 (9th Cir. 2012) (finding it was not ineffective assistance not to impeach a witness when it "would have allowed those two witnesses to restate or emphasize testimony initially elicited in direct examination [and harmful to the defendant]"). It was therefore not an unreasonable application of clearly established federal law for the Commissioner to find Petitioner had not overcome the presumption that trial counsel's decision was reasonable.

Further, Petitioner has not shown the failure to introduce impeachment evidence changed the outcome of his trial. At the most, admission of the cell phone records and text messages would have shown that L.H. provided inconsistent statements about the rape. However, during

1  her testimony, L.H. admitted to changing her account as to the number of rapes, admitted to

2  staying at home after the incident and not contacting anybody despite the ease with which she

3  could do it, and admitted that the clothes she wore the day of the incident were relatively

4  undamaged, despite being "ripped" off her. Dkt. 8, Ex. 2, at 93, 98 118-19, 128-29, 159. It was

5  thus reasonable for the Commissioner to conclude additional impeachment evidence that would

6  show she had inconsistent statements or that she was in a controlling environment, considering

7  the record on the whole, does not demonstrate a substantial likelihood that the result would have

8  been different. Petitioner has thus failed to demonstrate the alleged impeachment evidence had a

9  likelihood to change the result of Petitioner's trial.

10        Pursuant to *Strickland*, Petitioner has failed to show the Commissioner unreasonably

11  applied clearly established federal law when he found that his trial counsel's behavior was

12  objectively unreasonable, has further failed to show, even if it was unreasonable, that it would

13  likely have changed the outcome of his trial, and thus has failed to demonstrate he received

14  ineffective assistance of counsel. Accordingly, the undersigned finds petitioner is not entitled to

15  relief as to his first subground and recommends his first subground be denied.

16  <center>CERTIFICATE OF APPEALABILITY</center>

17        A petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district

18  court's dismissal of the federal habeas petition only after obtaining a certificate of appealability

19  (COA) from a district or circuit judge. *See* 28 U.S.C. § 2253(c). "A certificate of appealability

20  may issue . . . only if the [petitioner] has made a substantial showing of the denial of a

21  constitutional right." 28 U.S.C. § 2253(c)(2). Petitioner satisfies this standard "by demonstrating

22  that jurists of reason could disagree with the district court's resolution of his constitutional

23  claims or that jurists could conclude the issues presented are adequate to deserve encouragement

24

1  to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*,
2  529 U.S. 473, 484 (2000)). No jurist of reason could disagree with this Court's evaluation of
3  Petitioner's claims or would conclude the issues presented in the Petition should proceed further.
4  Therefore, the Court concludes Petitioner is not entitled to a certificate of appealability with respect
5  to this Petition.

## CONCLUSION

For the reasons set forth above, the Court recommends Petitioner's Petition be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on September 28, 2018, as noted in the caption.

Dated this 12th day of September, 2018.

David W. Christel
United States Magistrate Judge